RICHARD H. GREENER, ISB #1191
DANIEL LORAS GLYNN, ISB #5113
GREENER BURKE SHOEMAKER OBERRECHT P.A.
950 W. BANNOCK ST., STE 950
BOISE, IDAHO 83702
TELEPHONE: (208) 319-2600
FACSIMILE: (208) 319-2601
*rgreener@greenerlaw.com*
*dglynn@greenerlaw.com*

FIELDS ALEXANDER, TEXAS BAR #00783528, *pro hac vice pending*
JOEL T. TOWNER, TEXAS BAR #24083978, *pro hac vice pending*
BECK REDDEN LLP
A Registered Limited Liability Partnership
1221 McKinney Street, Suite 4500
Houston, TX 77010-2010
TELEPHONE:  (713) 951-3700
FACSIMILE:   (713) 951-3720
*falexander@brsfirm.com*
*jtowner@brsfirm.com*

Attorneys for Plaintiffs

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF IDAHO

| | |
|---|---|
| MARCUS & MILLICHAP REAL ESTATE INVESTMENT SERVICES OF SEATTLE, INC., MARCUS & MILLICHAP REAL ESTATE INVESTMENT SERVICES, INC., PAUL RYAN, RICHARD MERRYMAN, AND BILL SCHOFIELD,<br><br>     Plaintiffs,<br><br>vs.<br><br>JEANNE JACKSON-HEIM, in her official capacity as Executive Director of the Idaho Real Estate Commission,<br><br>KATHLEEN WEBER, MARVIS BRICE, MICHAEL JAMES JOHNSTON, AND MIKE GAMBLIN, in their official capacities as Commissioners of the Idaho Real Estate Commission,<br><br>     Defendants. | Case No._____<br><br>**PLAINTIFFS' COMPLAINT AND REQUEST FOR DECLARATORY AND INJUNCTIVE RELIEF** |

Plaintiffs Marcus & Millichap Real Estate Investment Services of Seattle, Inc.; Marcus & Millichap Real Estate Investment Services, Inc.; Paul Ryan; Richard Merryman; and Bill Schofield file this Complaint. Plaintiffs seek damages as well as declaratory, injunctive, and other relief as outlined below.

## NATURE OF THIS ACTION

1.     Plaintiffs challenge the Idaho Real Estate Commission's (the "IREC's") unconstitutional prohibition against cooperation between Idaho real estate brokers and real estate agents licensed by other states. Since 2007, the IREC has elected to ban out-of-state real estate agents from almost any involvement in transactions involving Idaho property, even when they associate with a licensed Idaho broker. The last state to attempt to defend such a scheme was Kentucky, and its former policy – which was very similar to IREC's in this case – was twice held to be an unconstitutional violation of the Commerce Clause of the United States Constitution. *See River Oaks Management v. Brown*, 2007 WL 2571909 (W.D. Ky. 2007); *Marcus & Millichap Real Estate Inv. v. Skeeters*, 395 F. Supp. 2d 541 (W.D. Ky. 2005). This ruling has now been acknowledged by Kentucky's appellate court. *LexCin Partners, Ltd. v. Newmark S. Region, LLC*, No. 2008-CA-001170, 2009 WL 2341553, at *1 (Ky. Ct. App. 2009).

2.     Plaintiffs have repeatedly cited this and other authority to the IREC in an effort to convince the IREC to stop enforcing its unconstitutional restrictions on out-of-state agents. But the IREC has chosen to ignore that authority. The IREC has refused to relent and continues to ban constitutionally protected interstate commerce. The IREC threatens those who engage in such commerce with administrative actions and civil penalties. Thus, plaintiffs have no choice but to file this action seeking to enforce their constitutional rights.

**PLAINTIFF'S COMPLAINT AND REQUEST FOR DECLARATORY AND INJUNCTIVE RELIEF -2**

3.      Pursuant to FED. R. CIV. P. 5.1, Plaintiffs are concurrently serving the Attorney General of Idaho with a Notice of Constitutional Question and a copy of Plaintiffs' Complaint and Request for Declaratory and Injunctive Relief.

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a)(3).

5.      Venue is proper in this district under 28 U.S.C. § 1391(b)(1) because the IREC maintains its principal place of business and resides in this district.  Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to this action occurred in this district, in which the IREC sits.  This action is properly assigned to this division pursuant to Dist. Idaho Loc. Civ. R. 3.1.

## PARTIES

*A.      Plaintiffs*

6.      Marcus & Millichap Real Estate Investment Services of Seattle, Inc. is a subsidiary of Marcus & Millichap Real Estate Investment Services, Inc.  It is headquartered in Calabasas, California.  Marcus & Millichap Real Estate Investment Services of Seattle, Inc. has an office in Boise, Idaho through which it services clients both within and outside the State of Idaho.

7.      Marcus & Millichap Real Estate Investment Services, Inc. is headquartered in Calabasas, California.  Marcus & Millichap Real Estate Investment Services, Inc. is the parent company for Marcus & Millichap Real Estate Investment Services of Seattle, Inc. and other subsidiary entities (collectively "Marcus & Millichap").  Marcus & Millichap entities collectively service commercial real estate investment needs for clients across the United States, as well as in Canada.

**PLAINTIFF'S COMPLAINT AND REQUEST FOR DECLARATORY AND INJUNCTIVE RELIEF -3**

8.      Paul Ryan is Marcus & Millichap's designated Idaho broker.  Mr. Ryan holds an Idaho broker's license and works out of Marcus & Millichap's Boise, Idaho office.  He resides in Idaho.

9.      Richard Merryman is Senior Vice President of Investments with Marcus & Millichap. Mr. Merryman holds a California license and works out of Marcus & Millichap's San Francisco, California office.  He resides in California.

10.     Bill Schofield is First Vice President of Investments with Marcus & Millichap.  Mr. Schofield holds a California license and works out of Marcus & Millichap's San Francisco, California office.  He resides in California.

**B.      *Defendants***

11.     Defendant Jeanne Jackson-Heim is Executive Director of the IREC.  She holds an Idaho license and works at 575 E. Parkcenter Boulevard, Suite 180, Boise, Idaho.  She may be served in person wherever she may be found.

12.     Defendant Kathleen Weber was appointed as a commissioner of the IREC by Governor Otter in 2011.  She holds an Idaho license and works at 325 W. Third Street, Moscow, Idaho.  She may be served in person wherever she may be found.

13.     Defendant Marvis Brice was appointed as a commissioner of the IREC by Governor Otter in 2012.  She holds an Idaho license and works at 633 East Main Street, Burley, Idaho.  She may be served in person wherever she may be found.

14.     Defendant Michael James Johnston was appointed as a commissioner of the IREC by Governor Otter in 2014.  He holds an Idaho license and works at 3525 Merlin Drive, Idaho Falls, Idaho.  He may be served in person wherever he may be found.

15.     Defendant Mike Gamblin was appointed as a commissioner of the IREC by Governor Otter in 2013.  He holds an Idaho license and works at 1450 S. Eagle Flight Way, Suite 100, Boise, Idaho.  He may be served in person wherever he may be found.

16.     Hereinafter, Defendants Jackson-Heim, Weber, Brice, Johnston and Gamblin shall be referred to collectively as the "IREC."

## FACTS

### A.     Background

17.     Plaintiffs include a national commercial real estate brokerage firm, one of its subsidiary entities, an Idaho-licensed broker, and out-of-state licensed real estate agents.  All of the Plaintiffs are being deprived their constitutional right to engage in interstate commerce free from protectionist, discriminatory, and unnecessarily burdensome state economic restraints.

18.     The IREC, which is a state-constituted commission controlled by local Idaho real estate brokers, only recently adopted its protectionist and discriminatory policies.  Prior to 2007, Idaho had for decades permitted licensed out-of-state agents to work with Idaho brokers on Idaho property transactions.  However, in 2007 the IREC arbitrarily reversed course and decided that such collaboration would no longer be permissible.  No new statute prompted this change.  Rather, the IREC's policy changed simply because its new Executive Director, Ms. Jackson-Heim, decided it should be so.  In truth, the IREC's current policy is not only unconstitutional, it also violates Idaho law.  Idaho law expressly contemplates out-of-state brokers and agents working on Idaho transactions in collaboration with licensed Idaho brokers.

19.     Under the IREC's new policy, even if a national brokerage firm maintains an office and a licensed broker in Idaho (as Marcus & Millichap does), that broker is prohibited from using the resources of his or her own firm to promote Idaho properties and assist clients.  The IREC

**PLAINTIFF'S COMPLAINT AND REQUEST FOR DECLARATORY AND INJUNCTIVE RELIEF -5**

enforces its ban on national firms engaging in interstate commerce by leveling civil fines and threatening disciplinary actions against the national firms, their out-of-state agents and the firm's local Idaho broker.

### B.    The Commercial Real Estate Market

20.    Commercial real estate is promoted and sold nationally and internationally. Buyers of investment properties, which range from small private concerns to large institutional investors, often have diversified portfolios that include investment properties located in different states. This is especially true for large institutional investors, which frequently invest in specialized types of property on a regional or national basis.

21.    As distinct from residential real estate, investors in commercial real estate typically develop long-term relationships with one or more broker advisors upon whom they rely to assist in managing and growing their portfolios. In this respect, commercial investors often view their real estate agents as trusted advisors and partners. Among other things, such agents generally have an expertise in the type of investment their clients favor along with an in-depth understanding of each client's investment objectives. Such specialization, coupled with access to a national platform of commercial properties, assists the agent in maximizing value for his or her client in both the purchase and sale of commercial real estate.

22.    Commercial real estate is a national marketplace in which buyers and sellers of real estate are often located in states other than where the commercial property is located. Consequently, commercial brokerage firms expend significant resources to develop integrated networks of brokers who can promote listings to investors with whom they have relationships, assist existing clients in the listing and marketing of properties located in different states, coordinate multi-state transactions (which are increasingly common) and share expertise on specific types of transactions. In contrast,

**PLAINTIFF'S COMPLAINT AND REQUEST FOR DECLARATORY AND INJUNCTIVE RELIEF -6**

local brokers who choose not to (or are not permitted to) cooperate or work with out-of-state agents are not able to compete on the basis of market access and expertise, both of which are especially important if a seller is to be able to market a property effectively to the largest possible pool of qualified buyers. Additionally, such local brokers do not generally have the resources to efficiently coordinate multi-state transactions, nor do they typically possess the same in-depth understanding of a national client's investment strategies, objectives, and portfolio that national brokers have by virtue of their established long-term relationships.

23.     Buyers and sellers of commercial property are predominantly sophisticated private and institutional investors. These investors often have diversified portfolios that include specialized types of property located in multiple states. Accordingly, commercial brokers must be able to promote properties nationally, advise on a multitude of different (and often complex) transactions, and analyze the financial aspects of transactions involving the specific type of property at issue.

24.     Because the market for commercial real property is national, agents in different states must work together to efficiently and effectively meet client needs. This is true regardless of whether the client wishes to list commercial properties for sale or to buy commercial properties that have been listed by another broker. Whatever the commercial asset class, whether retail shopping properties, single tenant properties, commercial office assets, or some other category of commercial real estate, successful commercial brokerage requires sophisticated financial analysis attuned to the asset class in question as well as national marketing to find and match interested buyers and sellers.

25.     As a result of the national nature of the market and the multitude and complexity of the different types of transactions, commercial brokerage firms compete on the basis of, among other things, their ability to: (1) bring capital to local and regional markets by matching buyers and sellers nationally; (2) coordinate complex multi-state transactions; and (3) provide value-added consulting

services such as strategic planning, market analysis, value analysis, trend forecasts, and counseling. Also important is a firm's knowledge of submarkets and market segments, which is essential to planning investment strategies, evaluating investment opportunities, and handling multi-state transactions. In short, commercial brokerage firms function as a sort of real estate investment bank by serving as investment advisors and assisting in the efficient placement of capital.

26.    There are a number of national commercial real estate brokerage firms that provide highly specialized investment brokerage services to private and institutional investors nationwide for transactions involving a wide variety of commercial properties. Marcus & Millichap is one of the largest such firms. Marcus & Millichap, like other commercial brokerage firms, is not involved in brokering personal residences among individual homeowners. It brokers only commercial (income producing) property.

27.    Commercial brokerage firms often have offices in multiple states, if not throughout the country. Marcus & Millichap has offices in most major U.S. cities, with more than 1,200 affiliated commercial real estate agents across the country. All of Marcus & Millichap's agents are duly licensed in one or more states, are managed by full-time veteran executives and carry errors and omissions insurance, so there is little question about oversight and accountability. These agents share information within the firm and work together to meet their clients' needs efficiently and seamlessly.

28.    Clients of national brokerage firms like Marcus & Millichap frequently have large portfolios with properties in many states, and transactions can and often do involve a client's entire multi-state portfolio.

29.    Clients choose commercial firms such as Marcus & Millichap precisely because their agents work together, sharing information and expertise and acting as intermediaries with their

established contacts to broker commercial property.  The benefits of such an integrated approach are readily apparent in the context of complex multi-state transactions (e.g., the simultaneous sale of retail chain stores in multiple states), which enable clients to realize substantial efficiencies while limiting transaction costs.

30.     Investors in commercial real estate assets typically rely on close business relationships with those who represent them as brokers or agents.  Many brokers and agents have served as the exclusive representative for an investor-client throughout relationships spanning 5, 10 and 20 years or more.  Commercial brokerage firms such as Marcus & Millichap have invested considerable resources developing a nationwide network of commercial property owners, developers, investors, and other commercial real estate agents.  That network enables them to identify and market properties more efficiently and effectively than would otherwise be possible by a single local firm dependent exclusively on "cold calls" and advertisements.  And the network allows trusted brokers and agents to manage transactions around the country with the cooperation of local brokers, much like trusted lawyers licensed in their home state litigate cases around the country with the cooperation of local counsel.

31.     Additionally, commercial brokerage firms, especially national brokerage firms, have developed sub-specialties in various types of properties, transactions and representations that involve unique expertise and specialized knowledge typically not possessed by a single broker or local firm.

32.     In sum, permitting cooperation between Idaho brokers and out-of-state agents benefits consumers by ensuring that they obtain the best possible advice and counsel and have efficient and effective access to the national investment market.  But permitting such cooperation presents a competitive threat to local Idaho brokers who choose not to affiliate with out-of-state state agents, and thus cannot offer clients the same national networks or expertise.  The obvious purpose of the

IREC's protectionist policy is to benefit Idaho brokers by protecting those brokers from competition with national firms in the interstate marketing and sale of Idaho commercial property. The result is simple economic protectionism of Idaho brokers. The effect is an undue burden on interstate commerce.

33.    Marcus & Millichap has an office in Boise and ensures that all transactions involving Idaho real estate are overseen by a licensed Idaho broker, even where the buyer and seller are not Idaho residents and never enter the state. By working with Marcus & Millichap agents in other states, Marcus & Millichap's Boise office has assisted its national investor clients in the national marketing, sale, and purchase of many Idaho real estate listings.

## C.    The IREC's Unconstitutional Policy

34.    The IREC issues real estate brokerage licenses and regulates and imposes discipline on brokers for violations of its rules or of state statutes governing real estate law. Heading the IREC are four commissioners from distinct geographic areas of the state. In accordance with Idaho Code § 54-2006, each commissioner must be a licensed Idaho real estate broker or associate broker who has had at least five years active license experience in the real estate business in Idaho. Directly beneath the IREC's commissioners sits the Executive Director. Since approximately 2007, the Executive Director for the IREC has been Ms. Jeanne Jackson-Heim.

35.    The IREC's efforts to shield Idaho brokers from interstate competition coincided with Ms. Jackson-Heim's arrival. Although Idaho law did not change, in 2007 the IREC decided to begin severely limiting cooperation between Idaho-licensed brokers and out-of-state agents in the marketing and/or sale of Idaho property. Previously, licensed out-of-state real estate agents had always been permitted to work on transactions involving Idaho property, as long as they associated with an Idaho broker and allowed that broker to conduct all in-state activity.

**PLAINTIFF'S COMPLAINT AND REQUEST FOR DECLARATORY AND INJUNCTIVE RELIEF -10**

36.      In March 2011, the IREC published a revised guideline titled "Brokering Idaho Properties Requires an Idaho Real Estate License."  *See* Ex. A.  This guideline forbids out-of-state brokers and agents from almost any involvement in Idaho property transactions.  Under the IREC'S revised guideline, a licensed out-of-state broker cannot engage in any "brokerage" activity concerning Idaho property, even if the out-of-state broker is duly licensed in his or her home state and affiliates with an Idaho broker.  *Id.* at p.1.

37.      The IREC has promulgated its new policy for the purported purpose of enforcing Idaho laws that, the IREC asserts, largely prohibit cooperation between Idaho brokers and out-of-state brokers.  Nevermind that, prior to May 2007, the same Idaho laws had permitted such cooperation.  The IREC currently prohibits agents licensed in other states from having any involvement in the selling, listing, buying, or negotiating of Idaho commercial real estate.  *Id.*  The IREC's new policy is absolute, applying even where an Idaho broker within the same national firm is involved in and supervising the transaction to ensure compliance with Idaho law.  It applies even where neither the buyer nor the seller resides in Idaho.  And it applies even where the out-of-state client has an established relationship with the out-of-state agent and desires that agent's participation in brokering an Idaho property transaction.

38.      By way of example, under the current IREC policy an Oregon real estate agent and his Oregon client can discuss the pros and cons of commercial property in Idaho.  But if the Oregon agent calls a California agent to discuss a possible purchase or sale of Idaho property, both out-of-state agents would be subject to IREC punishment for "brokering" Idaho property, even though none of the offending conduct occurred in Idaho.  For the reasons set forth in this Complaint, the IREC's far-reaching and unconstitutional attempt to enforce its state's rules to extra-territorial conduct cannot be condoned.

**PLAINTIFF'S COMPLAINT AND REQUEST FOR DECLARATORY AND INJUNCTIVE RELIEF -11**

39.     The IREC's ban against out-of-state agents brokering Idaho property protects local Idaho brokers from competition by severely limiting the ability of regional and national brokerage firms to offer integrated services to their investor clients.  Under the IREC's policies, a local Idaho office of a regional or national commercial broker, operated by a licensed Idaho broker, is virtually prohibited from collaborating with the firm's other agents to promote properties, alert buyers to investment opportunities, provide value-added consulting services, or share expertise.  The IREC's restrictions serve to unfairly protect the commissions of Idaho commercial brokers, who enjoy a virtually captive market without the competitive forces inherent in a national marketplace.

40.     In truth, the IREC's policy harms the very consumers—buyers and sellers of Idaho commercial property—that the IREC is charged with protecting.  Consumers are injured by the IREC's policy because it (1) reduces the pool of qualified investors for Idaho properties; (2) deters capital investment in Idaho; (3) prevents consumers from utilizing real estate professionals with whom they have established relationships; and (4) limits consumers in their ability to obtain specialized knowledge and expertise.  Out-of-state brokers and brokerage firms are injured because they are limited in their ability to compete on the basis of superior service and expertise for business involving interstate transactions.

D.     *The IREC's Policy Violates Idaho Law*

41.     As stated above, the IREC's new policy did not coincide with a change in Idaho's real estate laws.  Instead, in 2007 the IREC simply decided to reinterpret Idaho Real Estate License Law § 54-2002.  That section provides, in relevant part, that "[n]o person shall engage in the business or act in the capacity of real estate broker or real estate salesperson *in this state* without an active Idaho real estate license therefore."  Idaho Code § 54-2002 (emphasis added).  The IREC currently interprets this statute to forbid out-of-state real estate agents from any involvement in "brokering"

**PLAINTIFF'S COMPLAINT AND REQUEST FOR DECLARATORY AND INJUNCTIVE RELIEF -12**

Idaho property transactions, even when their involvement occurs outside Idaho. This is a misreading of the statute. Section 54-2002 does not (and cannot) attempt to regulate real estate activity occurring outside Idaho. It is limited on its face to activity occurring "in this state." The phrase "in this state" is not mere surplusage. It limits the reach of the statute to conduct occurring in Idaho. *See, e.g., McGillivray v. Cronrath*, 279 P. 613 (Idaho 1929); *Johnson v. Delane*, 290 P.2d 213 (Idaho 1955); *Farrell v. Whiteman*, 200 P.3d 1153 (Idaho 2009).

42.    The IREC's new policy has no basis in Idaho law. The Idaho Real Estate License Law in fact contemplates local brokers collaborating with out-of-state agents on Idaho real estate transactions. It expressly provides that out-of-state agents and Idaho brokers may share in commissions in such joint efforts. *See* Idaho Code § 54-2054(2). The IREC's current policy severely restricts the ability of out-of-state brokers to assist their clients in connection with Idaho property. Even if the out-of-state broker has a longstanding relationship with the client, and an intimate understanding of the type of property involved in a transaction, they are relegated to the sidelines under the IREC's policy. They cannot negotiate the transaction or have any involvement in the purchase or sale of the property. Ex. A at p. 1. Their involvement is currently limited to advising their client and the Idaho broker, even if the client wishes his or her longstanding broker to actively assist in brokering the property.

43.    More importantly, as discussed in more detail below, the IREC's new policy violates the Commerce Clause of the United States Constitution. The IREC's policy discriminates against, obstructs, and unreasonably burdens interstate commerce. The IREC seeks to protect the economic interests of local Idaho brokers by banning any other agent or broker from any "brokerage" activity in transactions involving Idaho property. The IREC's policy effectively assures that, even in interstate transactions, all substantive activity in connection with the property may only be

**PLAINTIFF'S COMPLAINT AND REQUEST FOR DECLARATORY AND INJUNCTIVE RELIEF -13**

performed by local Idaho brokers.  In addition, the IREC's new policy violates Plaintiffs' First Amendment rights by improperly restricting Plaintiffs' freedom of speech.

**E.     The IREC's Administrative Enforcement Actions and Investigations**

44.     Since 2007, the IREC's new policy has resulted in numerous investigations and disciplinary actions against out-of-state agents, in-state brokers, and brokerage firms.  Significantly, although the Plaintiffs in this action are currently facing investigations and disciplinary actions, to Plaintiffs' knowledge <u>no</u> complaint has been made by the buyer, the seller, or any other participant in the property transaction at issue.  The disciplinary actions at issue here were brought on the IREC's own initiative, despite the fact that no one was complaining about any aspect of the deal.

45.     The IREC has obtained penalties from numerous out-of-state agents for allegedly violating its protectionist policy.  These penalties go into the coffers of a commission dominated by local Idaho brokers.  Thus, not only does the IREC's regime eliminate competition from national commercial brokerage firms to the benefit of Idaho licensees, the IREC also seeks direct economic benefit through collection of penalties from out-of-state brokers and agents.  And the IREC currently has open disciplinary actions against the following plaintiffs in this action, seeking to further its collection and enforcement efforts.  Each of the following investigations concerns an alleged violation of IREC's policy forbidding cooperation between in-state brokers and out-of-state agents:

(i)     <u>Paul Ryan</u>

46.     Plaintiff Paul Ryan is Marcus & Millichap's designated broker in Idaho.  On or about July 7, 2014, the IREC notified Mr. Ryan in writing that it had initiated an investigation into his conduct relating to the brokering and sale of the Allstate Call Center land and building on or about July 12, 2012.  The IREC threatened that, if Mr. Ryan is found to have engaged in such conduct, he will be subject to penalties and fines by the IREC.  On or about June 2, 2015, the IREC notified Mr.

**PLAINTIFF'S COMPLAINT AND REQUEST FOR DECLARATORY AND INJUNCTIVE RELIEF -14**

19705-001/776319

Ryan that the IREC staff had concluded his conduct violated Idaho Code § 54-2040(5), and the Commissioners authorized the IREC to file a formal administrative complaint against Mr. Ryan.

(ii)    <u>Richard Merryman</u>

47.    Plaintiff Richard Merryman is a Senior Vice President of Investments with Marcus & Millichap and is a California-licensed agent.  On or about July 7, 2014, the IREC filed a complaint against Mr. Merryman alleging violations of IREC's policy forbidding cooperation between in-state brokers and out-of-state agents.   The IREC threatened that, if Mr. Merryman is found to have engaged in such conduct, he will be subject to penalties and fines by the IREC.  On or about June 2, 2015, the IREC notified Mr. Merryman that the IREC staff had concluded his conduct violated Idaho Code § 54-2002, and the Commissioners authorized the IREC to file a formal administrative complaint against Mr. Merryman.

(iii)    <u>Bill Schofield</u>

48.    Plaintiff Bill Schofield is a First Vice President of Investments with Marcus & Millichap and is a California-licensed agent.  On or about July 7, 2014, the IREC filed a complaint against Mr. Schofield alleging violations of IREC's policy forbidding cooperation between in-state brokers and out-of-state agents.  The IREC threatened that, if Mr. Schofield is found to have engaged in such conduct, he will be subject to penalties and fines by the IREC.  On or about June 2, 2015, the IREC notified Mr. Schofield that the IREC staff had concluded his conduct violated Idaho Code § 54-2002, and the Commissioners authorized the IREC to file a formal administrative complaint against Mr. Schofield.

(iv)    <u>Marcus & Millichap Real Estate Investment Services, Inc.</u>

49.    On or about July 7, 2014, the IREC filed a complaint against Marcus & Millichap Real Estate Investment Services, Inc. alleging violations of IREC's policy forbidding cooperation

between in-state brokers and out-of-state agents.  The IREC threatened that, if Marcus & Millichap Real Estate Investment Services, Inc. is found to have engaged in such conduct, it will be subject to penalties and fines by the IREC.  On or about June 2, 2015, the IREC notified Marcus & Millichap Real Estate Investment Services, Inc. that the IREC staff had concluded that its conduct violated Idaho Code § 54-2002, and the Commissioners authorized the IREC to file a formal administrative complaint against Marcus & Millichap Real Estate Investment Services, Inc.

**F.**    ***The IREC's Policy Violates the Commerce Clause***

50.    Challenges to state statutes and regulations under the Commerce Clause are analyzed under a two-tiered approach.  *S.D. Myers, Inc. v. City and County of San Francisco*, 253 F.3d 461, 466 (9th Cir. 2001).  When a state statute or regulation directly regulates or discriminates against interstate commerce, or when its effect is to favor in-state economic interests over out-of-state interests, the statute or policy is generally struck down without further inquiry.  *Id*.  If the statute or regulation has only indirect effects on interstate commerce and regulates evenhandedly, however, a Commerce Clause analysis requires examination into whether the state's interest is legitimate and whether the burden on interstate commerce clearly exceeds any local benefits.  *Id*.  Under either approach, "[t]he 'central rationale' of the dormant Commerce Clause 'is to prohibit state or municipal laws whose object is local economic protectionism, laws that would excite those jealousies and retaliatory measures the Constitution was designed to prevent.'"  *Id*. (*quoting C & A Carbone, Inc. v. Town of Clarkstown*, 511 U.S. 383, 390 (1994)).

51.    In this case, the IREC's discriminatory and protectionist policies fail under either tier of the Commerce Clause analysis.

**PLAINTIFF'S COMPLAINT AND REQUEST FOR DECLARATORY AND INJUNCTIVE RELIEF -16**

### 1. *The IREC's policy attempts to regulate interstate commerce*

52.     The IREC's policy prevents licensed out-of-state agents from participating with Idaho brokers in the brokering of Idaho real estate transactions, even if the out-of-state agent works only from his home state and never enters Idaho.  The IREC is, therefore, attempting to regulate interstate commerce occurring outside Idaho.  This, in and of itself, establishes that the IREC's policy violates the Commerce Clause's prohibition against state regulation of interstate commerce.  The IREC's protectionist policy must yield to the Constitution's protection of the free flow of interstate commerce.

### 2. *The IREC's policy discriminates against interstate commerce*

53.     Only licensed Idaho brokers are currently permitted to participate in brokering transactions involving Idaho property.  Out-of-state agents, even when they are properly licensed by their own state and work only in conjunction with a licensed Idaho broker, are severely limited in their ability to participate in Idaho property transactions.  The IREC is thus discriminating against interstate commerce, to the benefit of local Idaho brokers.  This discrimination is felt most acutely by national brokerage firms and their clients.  It also harms all buyers and sellers of Idaho commercial property by denying them the services, networks, expertise, and access to national markets that national commercial brokerage firms can provide.  The effect of the IREC's policy is to favor local brokers over out-of-state agents.  The result is that licensed out-of-state agents are precluded from participating in interstate commerce with regard to Idaho property transactions.  For these reasons as well, the IREC's policy violates the Commerce Clause.  *See Skeeters*, 395 F. Supp. 2d at 549; *see also River Oaks Management*, 2007 WL 2571909 at *6-7.

**PLAINTIFF'S COMPLAINT AND REQUEST FOR DECLARATORY AND INJUNCTIVE RELIEF -17**

### 3. *The burden on interstate commerce clearly exceeds any benefit to Idaho*

54.     The IREC's policy violates the second tier of the Commerce Clause analysis as well. The IREC has no legitimate interest in forbidding licensed out-of-state agents from working with Idaho brokers in brokering transactions involving Idaho property.  The IREC's policy imposes burdens on interstate commerce that are clearly excessive in relation to any supposed local benefits. *See River Oaks Management*, 2007 WL 2571909 at *8.  The IREC's policy places a "heavy burden" on interstate commerce by restricting market access and isolating Idaho from the national market. *Id*.  Prohibiting cooperation between out-of-state agents and licensed Idaho brokers does not serve a legitimate public interest, especially if the out-of-state agent is licensed and the Idaho broker oversees the interstate transaction.  *Id*.  Indeed, only Idaho brokers benefit from such restrictions, as they are able to reap the financial rewards of no national competition and a monopoly on Idaho real estate transactions.  Everyone else, including Idaho property owners, out-of-state agents, and national brokerage firms suffers at the hands of the IREC's protectionist policies.

55.     Furthermore, the IREC can achieve the goal of competent broker representation through less burdensome means.  Requiring out-of-state agents to be licensed, and to work in conjunction with a licensed Idaho broker who is responsible for insuring compliance with Idaho law, would serve to protect Idaho property owners without unduly burdening interstate commerce or discriminating against out-of-state agents.  *Skeeters*, 395 F. Supp. 2d at 549.  Any legitimate concern the IREC might have with the activities of out-of-state agents would be adequately addressed by the involvement and supervision of the cooperating Idaho broker.  As the Court in *Skeeters* noted, a supervising local broker would be legally and professionally responsible for the acts of the cooperating broker and could "'make certain that the guidelines, regulations and laws of [Idaho] are observed while the out-of-state broker can advise the foreign investor on matters critical to its overall

**PLAINTIFF'S COMPLAINT AND REQUEST FOR DECLARATORY AND INJUNCTIVE RELIEF -18**

interests.'" *Id*. at 549-50 (quoting *Furr v. Fonville Morisey Realty, Inc.*, 503 S.E.2d 401, 406 (N.C. Ct. App. 1998)).  "'[W]hen, as happens with increasing frequency in our state, the buyer/lessee is an out-of-state investor or corporation with complex interests and concerns best known to its regular brokers in its home state, the interests of the parties are better served if the out-of-state party is allowed to rely on the combined efforts of a local broker and a broker familiar with its particular situation.'" *Id*. at 549.  "'[I]ndeed, the complete exclusion of its regular broker from a transaction may well render the foreign buyer/lessee more vulnerable to fraud.'"  *Id.* at 550 (quoting *Furr*, 503 S.E.2d at 406).

56.     There is no legitimate local regulatory purpose for prohibiting the involvement of out-of-state agents in brokering Idaho commercial property, especially when Idaho licensees are involved to ensure compliance with applicable local regulations.

57.     There is no legitimate local regulatory purpose for prohibiting the involvement of out-of-state agents in brokering Idaho commercial property where that agent has an established relationship of trust and confidence with a particular seller or buyer of Idaho real estate.

58.     The IREC's attempt to prohibit non-Idaho licensees from providing services to their out-of-state clients, outside the borders of Idaho, is beyond the scope of the IREC's legitimate regulatory authority.

59.     If all states were to adopt policies similar to the IREC's, it would be virtually impossible for consumers of real estate brokerage services to obtain consistent investment advice, maintain a diverse portfolio of properties, engage in multi-state transactions, and maximize property values or identify investment opportunities without expending substantial additional resources. Buyers and sellers would be forced to work not with a single national broker analyzing and consulting on their whole portfolio, but with scores of local brokers focused only on properties in

their individual states.  And each of those local brokers would be legally prohibited from even discussing other properties the client owns or might have interest in with potential buyers or sellers, for fear of transgressing the protectionist policies in the state where the client's other properties or possible acquisition targets may be located.

60.    When taken to its logical conclusion, the gridlock that would result if all 50 states adopted the IREC's approach is apparent.  A seller with properties in ten states would have to retain ten separate agents, one in every state, who would be negotiating contracts and closing deals for each state.  These separate agents would literally be prohibited from working together to effectuate the seller's overall business objectives, because any involvement by any other broker would violate the protectionist policies in a broker's local jurisdiction.  Likewise, each buyer, at significant financial and transaction costs, would have to retain an agent licensed in the state of each property's location and segregate communications between them.  A purchaser who desires to buy property in ten states would have to retain ten agents.  A deal that could have been completed by two agents in a single transaction would thus require 20 agents and ten transactions.  This obstruction of interstate commerce is precisely what the Commerce Clause forbids.

## G.    *The IREC's Policy Restricts Plaintiffs' Freedom of Speech Rights, Violating the First and Fourteenth Amendments*

61.    To effect the IREC's protective scheme, the IREC regulates the speech of those involved in Idaho real estate transactions in a variety of ways.  These regulations include both content-based and speaker-based restrictions.  The regulations restrict broad marketing speech directed at a wide audience and speech that does no more than propose a commercial transaction to a particular market participant.

62.    The IREC policy restricts Plaintiffs' speech proposing a commercial transaction to buyer or sellers of Idaho Real Estate.  Ex. A, p. 3.  Similarly, the IREC prohibits Plaintiffs from

**PLAINTIFF'S COMPLAINT AND REQUEST FOR DECLARATORY AND INJUNCTIVE RELIEF -20**

engaging in "any communication, written or oral, that may be construed as 'negotiation.'" Ex. A, p. 3. The IREC also regulates certain content of marketing materials used in connection with Idaho real estate. IREC policy mandates that every broker or sales person identified on marketing material be a broker or sales person licensed in Idaho. Ex. A, p. 3. Accordingly, the IREC prohibits any person from disclosing a non-Idaho broker's identity and involvement with a particular transaction when marketing Idaho real estate. Plaintiffs' proposing of commercial transactions, communication with market participants and disclosure of involvement with transactions is commercial speech.

63.    This commercial speech neither relates to unlawful activity, nor is it misleading. Thus, Plaintiffs' commercial speech is subject to protection and, at a minimum, the IREC must justify its regulation as consistent with the First Amendment. *Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n of New York*, 447 U.S. 557, 565 (1980). To be consistent with the First Amendment, the IREC must demonstrate: (1) the asserted governmental interest is substantial; (2) the regulation advances the governmental interest asserted in a direct and material way; and (3) the regulation is not more extensive than is necessary to serve that interest. *Id.* at 565; *Rubin v. Coors Brewing Co.*, 514 U.S. 476, 487 (1995).

64.    The IREC's policy is expressly aimed at prohibiting commercial speech of non-Idaho licensees outside the borders of Idaho to out-of-state buyers and sellers. This exceeds the scope Idaho's legitimate interest—regulating the profession of real estate brokers *within its boundaries*. The IREC has no substantial interest that justifies the broad restrictions placed on Plaintiffs' commercial speech.

65.    The IREC's regulation does not directly advance any substantial governmental interest. Silencing brokers outside the boundaries of Idaho, licensed in their own respective states, directly advances no substantial state interest. Similarly, concealing non-Idaho brokers' involvement

from the public directly advances no substantial state interest. Rather, by concealing the involvement of non-Idaho brokers from the public and silencing non-Idaho brokers, the IREC regulation protects its local brokers. The IREC's action against Plaintiffs demonstrates the incongruity of the IREC regulation with any substantial interest. Here, the IREC seeks to penalize Plaintiffs for exercising protected commercial speech in connection with an Idaho real estate transaction despite the fact that no participant of the transaction has complained of any harm.

66.    The IREC's regulation is also more extensive than is necessary to regulate any substantial interest. Again, any legitimate concern the IREC might have with the activities of out-of-state agents could be adequately addressed by the involvement and supervision of the cooperating Idaho broker. As the Court in *Skeeters* noted, a supervising local broker would be legally and professionally responsible for the acts of the cooperating broker and could "'make certain that the guidelines, regulations and laws of [Idaho] are observed while the out-of-state broker can advise the foreign investor on matters critical to its overall interests.'" *Skeeters*, 395 F. Supp. 2d at 549-50 (quoting *Furr v. Fonville Morisey Realty, Inc.*, 503 S.E.2d 401, 406 (N.C. Ct. App. 1998)). Such a proposal, used by states across the United States, adequately addresses any legitimate concern without the draconian restrictions, silencing and concealing the involvement of out-of-state brokers in connection with Idaho real property transactions.

67.    Moreover, legislation or government regulation which imposes a specific, content-based ban is subject to heightened judicial scrutiny. *Sorrell v. IMS Health Inc.*, ____ U.S. ____, 131 S. Ct. 2653, 2664 (2011). The IREC's prohibition on advertising the involvement of non-Idaho brokers is a content-based ban, specifically regulating speech based on the content.

68.    Advertising Plaintiffs' involvement in a real estate transaction through marketing materials is speech. Many national real estate brokers, including Plaintiffs Richard Merryman, Bill

Schofield and other Marcus and Millichap brokers, are hired for their recognized expertise in particular commercial real estate transactions.  Advertising their involvement provides truthful, factual information relevant to the transaction.  Under the IREC policy, even a licensed Idaho broker is banned from advertising the identity and involvement of a non-Idaho broker.  The IREC bans this marketing content because it disagrees with the message: advertising the identity and involvement of non-Idaho brokers who bring national expertise and recognition to a transaction.

**H.**    ***Irreparable Harm***

69.    Without intervention from this Court, Plaintiffs face irreparable harm from the IREC's continued enforcement of its protectionist regime.  Such enforcement deprives Plaintiffs of their rights under the Commerce Clause of the United States Constitution to engage in interstate commerce free from protectionist, discriminatory, and/or unnecessarily burdensome state economic restraints.

70.    The IREC's continued enforcement of its protectionist policy threatens the livelihoods of Idaho brokers and agents, including Plaintiff Ryan.

71.    The IREC's continued enforcement of its protectionist policy denies non-Idaho licensees, including licensees affiliated with Marcus & Millichap, access to Idaho markets and prevents them from being able to service their long-standing clients.

72.    The IREC's continued enforcement of its protectionist policy injures owners of Idaho commercial property, by preventing them from engaging the brokers of their choice when they wish to sell their properties, by preventing them from obtaining valuable investment and marketing services provided by national brokerage firms, and by potentially depressing the value of their property by segregating Idaho commercial property from the national marketplace.

**PLAINTIFF'S COMPLAINT AND REQUEST FOR DECLARATORY AND INJUNCTIVE RELIEF -23**

73.     The IREC's continued enforcement of its protectionist policy injures investors and potential investors in Idaho commercial property, by preventing them from openly accessing the interstate market involving Idaho commercial property and by depriving them of valuable investment services with respect to their Idaho property.

74.     The IREC's enforcement also violates Plaintiffs' First Amendment free speech rights, made applicable to the states through the Fourteenth Amendment.  The IREC policy restricts the free flow of truthful, factual information relevant to commercial real estate transactions based on the content of the message and the speaker.  Without intervention from this Court, Plaintiffs face irreparable harm from the IREC's continued suppression of Plaintiffs' free speech rights.

## COUNT I

### *42 U.S.C. § 1983, Violation of the Commerce Clause*

75.     Plaintiffs restate and reallege the allegations set forth above.

76.     Defendants, under color of state law, have imposed and continue to enforce the IREC's policy prohibiting cooperation between Idaho brokers and non-Idaho licensed agents in the interstate brokerage of Idaho commercial property.  Idaho law, as interpreted by the IREC, and the IREC's policy and enforcement of that policy, creates a protectionist, discriminatory, and/or unreasonably burdensome restraint on interstate commerce in violation of the Commerce Clause of the United States Constitution.

## COUNT II

### *42 U.S.C. §1983, Violation of the First Amendment*

77.     Plaintiffs restate and reallege the allegations set forth above.

78.     Defendants, under color of state law, have imposed and continue to enforce the IREC's policy.  Idaho law, as interpreted by the IREC, and the IREC's policy and enforcement of

that policy, deprives Plaintiffs of their right to freedom of speech in violation of the First Amendment to the United States Constitution as applied to Idaho and the IREC under the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.

## COUNT III

### *28  U.S.C. § 2201, Declaratory Relief*

79.     Plaintiffs restate and reallege the allegations set forth above.

80.     Plaintiffs seek a declaration that Idaho Code §§ 54-2002 and 54-2040(5) do not prohibit licensed out-of-state agents from brokering Idaho property transactions in conjunction with a licensed Idaho real estate broker, and that the IREC's policy as set forth in Exhibit A violates Idaho law.

81.     Plaintiffs also seek a declaration that the IREC's policy as set forth in Exhibit A violates the Commerce Clause of the United States Constitution, obstructing Plaintiffs' rights to engage in interstate commerce in transactions involving Idaho property.

82.     To the extent this Court finds that the IREC's policy does not conflict with Idaho law, Plaintiffs seek a declaration that Idaho Code §§ 54-2002 and 54-2040(5) violate the Commerce Clause of the United States Constitution to the extent they purport to prohibit out-of-state licensed real estate agents and brokers from collaborating with Idaho brokers in the brokering of Idaho commercial property.

83.     To the extent this Court finds that the IREC's policy does not conflict with Idaho law, Plaintiffs seek a declaration that Idaho Code §§ 54-2002 and 54-2040(5) violate Plaintiffs First Amendment free speech rights, made applicable to the state of Idaho by the Fourteenth Amendment.

## COUNT III

### *42 U.S.C. § 1988,  Attorneys' Fees*

84.    Plaintiffs restate and reallege the allegations set forth above.

85.    Plaintiffs bring this action to vindicate their civil rights under the United States Constitution.

86.    Because Defendants have violated Plaintiffs' civil rights, Plaintiffs are entitled to an award of attorneys' fees and other allowable expenses pursuant to 42 U.S.C. § 1988.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that final judgment be entered against Defendants declaring, ordering and adjudicating that:

(a)    The IREC's policy, including the regulations promulgated to enforce it, violates Idaho law;

(b)    The IREC's policy, including the regulations promulgated to enforce it, violates the Commerce Clause of the United States Constitution;

(c)    The IREC's policy, including the regulations promulgated to enforce it, violates the First Amendment to the United States Constitution as made applicable to the state of Idaho and the IREC through the Fourteenth Amendment to the United States Constitution;

(d)    To the extent Idaho Code § 54-2002 and/or Idaho Code § 54-2040(5) is found to support the IREC's policy as set forth in Exhibit A, those statutes violate the Commerce Clause of the United States Constitution;

(e)    To the extent Idaho Code § 54-2002 and/or Idaho Code § 54-2040(5) is found to support the IREC's policy as set forth in Exhibit A, those statutes violate the First

**PLAINTIFF'S COMPLAINT AND REQUEST FOR DECLARATORY AND INJUNCTIVE RELIEF -26**

Amendment to the United States Constitution as made applicable to the state of Idaho and the IREC through the Fourteenth Amendment to the United States Constitution;

(f)      The IREC lacks jurisdiction or the authority to sanction, fine, or otherwise penalize out-of-state real estate agents or brokers for conduct that did not occur in Idaho;

(g)      Defendants be enjoined from enforcing the IREC's unconstitutional policy, and specifically from initiating or prosecuting any further disciplinary investigations, prosecutions, or other actions arising from the enforcement of the IREC's unlawful policy;

(h)      Defendants be enjoined from enforcing their ban on cooperation between Idaho brokers and out-of-state agents in the interstate brokerage of Idaho commercial property;

(i)      Defendants be enjoined from enforcing their advertising ban on the identity and involvement of non-Idaho brokers in material marketing Idaho real property;

(j)      Defendants be enjoined from enforcing their ban on non-Idaho brokers proposing commercial transactions of Idaho real property;

(k)      Defendants be enjoined from enforcing their ban on non-Idaho brokers engaging in any communication, whether written or oral, that may be construed as "negotiation";

(l)      Defendants expunge all records of disciplinary adjudication and settlements of disciplinary proceedings where the disciplinary proceeding was initiated or prosecuted to carry out the IREC's unlawful policy;

(m)      Defendants dismiss all pending investigations and/or disciplinary actions initiated or prosecuted under the IREC's unlawful policy;

**PLAINTIFF'S COMPLAINT AND REQUEST FOR DECLARATORY AND INJUNCTIVE RELIEF -27**

(n)     Plaintiffs be awarded all costs and attorneys' fees to which they are entitled; and

(o)     Such further relief as the Court may deem just and reasonable.

DATED this 19th day of June, 2015.

Respectfully submitted,

GREENER BURKE SHOEMAKER OBERRECHT P.A.

_____
RICHARD H. GREENER
DANIEL LORAS GLYNN

BECK REDDEN LLP
A Registered Limited Liability Partnership

       /s/ **FIELDS ALEXANDER**
FIELDS ALEXANDER
JOEL T. TOWNER

Attorneys for Plaintiffs

**PLAINTIFF'S COMPLAINT AND REQUEST FOR DECLARATORY AND INJUNCTIVE RELIEF -28**

# EXHIBIT A

IDAHO REAL ESTATE COMMISSION
Guideline #2
Revised March 2011

**BROKERING IDAHO PROPERTY REQUIRES AN IDAHO REAL ESTATE LICENSE**

This Guideline is designed to advise all brokers and salespersons, whether licensed in Idaho or in another state, that, in order to engage in any real estate brokering activities relating to Idaho real property, a broker or salesperson must hold an active Idaho real estate license. This is true even if the broker, salesperson, or their clients do not reside in or personally enter this state. A broker or salesperson who is not licensed in Idaho is not precluded from all participation in the Idaho transaction; however, he may not engage in any act of "real estate broker" without an Idaho license.

1. **An _Idaho_ license is required to engage in _any_ brokering activities relating to Idaho real property.**

Idaho law flatly prohibits any person from engaging in any act of a "real estate broker" "in this state" without an active Idaho real estate license. Idaho Code 54-2002.

"Real estate broker" is defined in the license law to include "any person who, directly or indirectly, while acting for another for compensation or promise or expectation thereof, sells, lists, buys, or negotiates, or offers to sell, list, buy or negotiate the purchase, sale, option or exchange of real estate", and also includes "any person who represents to the public" that he is engaging in any of these acts. Idaho Code 54-2004(35).

A person is "acting in this state" if he is "dealing with any interest in real property . . . that is situated in this state. . ." Idaho Code 54-2004(2).

Under Idaho Code, then, any person who "sells, lists, buys or negotiates" the purchase or sale of real property "situated in this state" is, by definition, engaging in acts requiring an Idaho real estate license.

2. **A person who does not hold an _Idaho_ license may not "co-broker" Idaho property with an Idaho-licensed broker.**

Idaho Code provides no mechanism to allow a person who does not hold an Idaho license to "co-broker" Idaho property with an Idaho-licensed broker. To the contrary, the law states that each person who performs any defined brokering act – whether as salesperson or broker – must hold an active Idaho license. Idaho Code 54-2002. There is no exception for persons who are licensed in another state and/or who privately contract with an Idaho designated broker to "supervise" or "be responsible for" him. A person who engages in any defined act of "real estate broker" – including selling, listing, buying, or negotiating the purchase or sale of Idaho real property – but who does not hold an active _Idaho_ license is guilty of unlicensed practice, regardless of any contractual arrangement with an Idaho-licensed brokerage.

3.    **An Idaho designated broker may not "co-broker" Idaho property with a person who does not hold an *Idaho* license**.

Similarly, an Idaho designated broker violates the license law if he "co-brokers" Idaho property with a person who does not hold an active Idaho license.  The license law specifically prohibits a designated broker from allowing any person not licensed <u>by the Commission</u> to represent him, as a salesperson, associate broker, or otherwise, in any real estate business activities requiring a real estate license.  Idaho Code 54-2038(4).  In order for a salesperson or associate broker to perform broker activities in Idaho, the salesperson or associate broker must hold an active Idaho license and <u>be licensed by the Commission with that broker (as an associate broker or salesperson)</u>.  Idaho Code 54-2004(35), (36) and Idaho Code 54-2018(4).   This state licensing requirement cannot be circumvented by private contract.

Idaho designated brokers should also be aware of the license law's prohibition against "lending" or "permitting" a license to be used to carry on a business for which an Idaho broker's license is required.  Under the license law, the Idaho designated broker must "<u>actively manage and have full control</u>" of the transaction. Idaho Code 54-2040(5).  Thus, an Idaho designated broker may not contract away his statutory management responsibilities; the Idaho designated broker, and not any other person, must be the active manager in control of the Idaho transactions.

4.    **Communication and cooperation that do not involve specific acts of brokering are not prohibited**.

There are situations in which a broker or salesperson licensed in another state but not in Idaho, ("non-Idaho licensee") has an existing client who wishes to buy or sell Idaho property.  Although the non-Idaho licensee is prohibited from engaging in any act specified as "brokering," he is not barred from all participation in the transaction.

    a.    <u>Communication with the client.</u>

A non-Idaho licensee may communicate with, consult, or advise his or her client about the Idaho transaction.  Advising or consulting with the client – even after the client has hired an Idaho broker – do not constitute acts of brokering and do not require a real estate license.

    b.    <u>Cooperation with the Idaho broker.</u>

Although a non-Idaho licensee may not "co-broker" Idaho property with an Idaho broker, such person is not prohibited from cooperating with an Idaho broker.  For example, he may consult and advise the Idaho broker concerning the objectives and concerns of the client.  Or, he may coordinate information between the Idaho transaction and other non-Idaho transactions.

    c.    <u>Non-Idaho licensee participating in an Idaho transaction may NOT engage in brokering.</u>

Although a non-Idaho licensee may advise his client and may collaborate with the Idaho broker with respect to Idaho property, he is prohibited from engaging in any act constituting "brokering." For example, a salesperson or broker who is not licensed in Idaho may <u>not</u>:

- Transmit offers or counteroffers to sell the client's property directly to potential buyers;
- Receive offers to buy the property directly from potential sellers; or
- Engage in any communication, written or oral, that may be construed as "negotiation."

**5.      Advertising Idaho property.**

Advertising and marketing Idaho property are not acts specifically defined as "brokering," and do not, in themselves*, require an Idaho real estate license.  However, Idaho Code does impose certain requirements relating to the advertisement of Idaho property.  Idaho Code 54-2053.  A person, including an individual or entity that is not licensed in Idaho, **may** market and advertise Idaho real property, **provided** the statute's advertising requirements are met, including:

- Every broker or salesperson named in the advertising holds an Idaho license;
- The licensed business name of the Idaho broker is included in the advertisement; and
- The advertisement is not otherwise misleading.

* (Only persons licensed in Idaho or another state may seek any type of referral fee or finder's fee. Idaho Code 54-2054(3).

**6.      Fee-sharing arrangements between licensed brokers.**

The license law prohibits Idaho brokers from "fee-splitting," i.e., sharing brokerage fees with, or paying any portion to, any person **except** persons who are licensed "in Idaho or another state or jurisdiction."  Idaho Code 54-2054(2).

This "fee-splitting prohibition" does not apply to fee arrangements made between Idaho-licensed brokers and brokerages licensed in other states.  The fee sharing arrangements made between an Idaho-licensed broker and a broker or salesperson not licensed in Idaho are beyond the regulatory interest of the Commission.  A broker not licensed in Idaho may, consistent with the Idaho license law, earn, in addition to a referral fee, a fee for performing other, non-broker services related to an Idaho property transaction.

**7.      Sanctions for unlicensed activity.**

Unlicensed brokering activity is a misdemeanor crime in Idaho punishable by imprisonment and a fine of $5,000 for individuals, and $10,000 for a business entity.  In addition, the Idaho Real Estate Commission is authorized to take administrative action against anyone engaged in unlicensed brokering activity, and to assess a civil penalty up to $5,000, plus costs and attorney fees.